IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez

Civil Action No. 1:19-cv-02667-RMR-STV

MARIE WATSON,

    Plaintiff,

v.

EMC CORP.,

    Defendant.

**ORDER**

This matter is before the Court on the parties' Joint Stipulation and Motion for Determination, ECF No. 142. For the reasons stated below, the Joint Motion for Determination is GRANTED consistent with this Order, and Plaintiff's request for equitable relief in the form of surcharge is GRANTED IN PART.

**I.    BACKGROUND**

The background of this case has been discussed at length in this Court's order on the previous motion for determination, ECF No. 110, and the Tenth Circuit's order and judgment on Plaintiff's appeal reversing and remanding that order, ECF No. 118. Thus, the Court restates the background only as necessary for this Order.

Plaintiff Marie Watson brought this action for breach of fiduciary duty against her husband's former employer, EMC Corporation ("EMC") after she was denied life insurance benefits under an employee welfare benefit plan governed by the Employment

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* On summary judgment, this Court ruled that even if EMC had breached its fiduciary duty to Plaintiff under ERISA, she was not entitled to equitable relief. ECF No. 110. The Tenth Circuit reversed, ruling that the Court erred by treating Plaintiff's Section 1132(a)(3) claim for fiduciary breach as if it were a claim under Section 1132(a)(1)(B) to recover under the plan, and remanded for further proceedings consistent with the opinion. ECF No. 118.

## II.     APPLICABLE LAW

"Congress enacted ERISA to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting 29 U.S.C. § 1001(b)). ERISA imposes fiduciary duties on plan providers. 29 U.S.C. § 1104. It requires fiduciaries to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." § 1104(a)(1)(A)(i).

Plan beneficiaries may enforce their rights through civil actions. 29 U.S.C. § 1132. Section 1132(a)(1)(B) permits a beneficiary to bring an action "to recover benefits due to him under the terms of his plan" or "to enforce his rights under the terms of the plan." Section 1132(a)(3)(B), by contrast, does not limit a beneficiary to the terms of the plan. Instead, it permits a beneficiary to bring an action "to obtain other appropriate equitable relief." § 1132(a)(3)(B). It is a "'catchall' provision[]" that "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that [ERISA] does not

2

elsewhere adequately remedy," including relief for beneficiaries harmed by breach of fiduciary duty. *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). Plaintiffs entitled to benefits under the terms of a plan cannot obtain § 1132(a)(3)(B) relief because they have another "adequate[] remedy" under § 1132(a)(1)(B). *Id.*

### III. ANALYSIS

Plaintiff seeks equitable relief under 29 U.S.C. § 1132(a)(3)(B), alleging that EMC breached its fiduciary duty to Plaintiff's late husband, Thayne Watson. Specifically, Plaintiff alleges EMC breached its fiduciary duty by responding to Mr. Watson's November 29, 2016 email inquiry about his life insurance benefits with incomplete and inaccurate information. Plaintiff alleges that Mr. Watson's reliance on this misleading information resulted in his failure to convert his life insurance benefits into an individual policy, thereby depriving Plaintiff of the policy's proceeds when Mr. Watson passed away unexpectedly. Acknowledging that she cannot recover under the plan because of this error, she nevertheless seeks equitable relief in the form of a surcharge for the breach of fiduciary duty. Thus, the question before the Court is whether EMC breached its fiduciary duty and if so, whether Plaintiff is entitled to recover a surcharge under § 1132(a)(3).

#### A. Mr. Watson's E-Mail Inquiry and Defendant's Response

Plaintiff's claim centers on Mr. Watson's November 29, 2016 e-mail to EMC requesting information regarding his benefits. While employed by EMC, Mr. Watson was enrolled in various benefit plans. After EMC was acquired by Dell, Mr. Watson accepted EMC's offer for voluntary separation and entered into the Separation Agreement and Release Under EMC Q4 015 Voluntary Separation Plan (the "Separation Agreement") on

3

December 31, 2015. ECF No. 59-1. The Separation Agreement explicitly provided that Mr. Watson would be eligible for continued participation in EMC's group life insurance plans "during Pay Continuation." *See* ECF No. 59-1 at 3. Pursuant to the Separation Agreement, Pay Continuation lasted through November 24, 2016. *Id.* at 1. Health benefits under EMC's group health plan, however, were eligible to be continued at the employee rate following expiration of the Pay Continuation period. *Id.* On November 9, 2016, Mr. Watson enrolled in Dell's employee benefits plan and received confirmation that he was enrolled and paying premiums for the Basic Group Term Life policy, which provided a benefit of $663,000. ECF No. 59-2.

On November 29, 2016 (five days after his Pay Continuation period ended), Mr. Watson e-mailed EMC: "I took VSP on 12-31-2016[1]. My pay ended on 11-24-2016. How do I start paying for my benefits at the employee rate for the next year? Feel free to call me if you have questions at the number below." ECF No. 59-3. EMC responded: "Good morning. You will be receiving a bill form [sic] adp pay flex to continue paying for your benefits. Benefits remain active during the transition." *Id.* It is undisputed that the Watsons paid each bill received from ADP. ECF No. 104. However, the bills the Watsons received from ADP were for group health care coverage and were not calculated to include premiums to continue paying for his life insurance coverage. To maintain his life insurance, Mr. Watson was required to convert his group life insurance coverage under the Plan to an individual life insurance policy when the group coverage ended, which occurred on his last date of employment, November 24, 2016. ECF No. 44-1. Mr. Watson

---

[1] Plaintiff contends this was a typographical error, as Mr. Watson was referring to 2015.

4

did not do so. Therefore, when he died on September 18, 2017, he had no life insurance coverage under the Plan or under an individual policy converted from his prior group coverage.

### B.     Breach of Fiduciary Duty

EMC does not dispute that it was Plan Administrator and therefore a fiduciary under ERISA. ECF No. 139 at 5. As a fiduciary, EMC was required to "discharge [its] duties with respect to [the Plan] solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries[.]" 29 U.S.C. § 1104(a)(1). A fiduciary must discharge his duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

Plaintiff argues that "[i]n response to Mr. Watson's inquiry, EMC, as a prudent fiduciary, should have informed him that he needed to convert his life insurance coverage and given him instructions on how to do so. At a minimum, EMC should have delineated which benefits would be covered by the invoice ADP would be sending him, and that life insurance premiums were separate and would be billed by MetLife." ECF No. 133 at 14-15. In response, EMC argues that because Mr. Watson's group life insurance coverage had already expired based on the terms of the Separation Agreement, "EMC could not have reasonably understood [Mr. Watson's] question to pertain to group life insurance benefits." ECF No. 134 at 14. Furthermore, EMC argues Mr. Watson had already been notified that his group life insurance coverage would terminate on the last date of his

5

employment (November 24, 2016) in three different ways: (1) the Separation Agreement, which provided he was entitled to group life insurance coverage only through his Pay Continuation period; (2) the Certificate of Insurance for the Plan, which states under the section "Date Your insurance Ends" that his group life insurance coverage would end on "the date [his] employment ends" and further provides instructions for conversion of the group life insurance policy to an individual life insurance policy; and (3) the November 29, 2016 Notice of Group Life Conversion Privilege sent to Mr. Watson by MetLife (the insurer of the Plan), which contained instructions to convert his coverage to an individual life insurance policy and accompanying letter.

The Court must ask whether, under these circumstances, EMC acted as a prudent fiduciary in its response to Mr. Watson's inquiry. *See Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425, 134 S.Ct. 2459, 189 L.Ed.2d 457 (2014) (The duty of prudence depends on the prevailing circumstances under which the fiduciary acts, and thus "the appropriate inquiry will necessarily be context specific."). "The appropriate yardstick of a fiduciary's duty of prudence under ERISA is not that of a prudent lay person, but rather that of a prudent fiduciary with experience dealing with a similar enterprise." *Troudt v. Oracle Corp.*, No. 16-CV-00175-REB-SKC, 2019 WL 1006019, at *5 (D. Colo. Mar. 1, 2019) (internal quotation marks omitted). Thus, to evaluate whether EMC acted as a prudent fiduciary, the Court looks objectively at "the fiduciary's conduct preceding the challenged decision – not the results of that decision." *Troudt*, 2019 WL 1006019, at *5 (quoting *Tussey v. ABB, Inc.*, 746 F.3d 327, 335 (8th Cir. 2014)). "Relatedly, '[b]ecause the fiduciary's obligation is to exercise care prudently and with diligence under the

6

circumstances then prevailing, his actions are not to be judged from the vantage point of hindsight.' " *Id.* (quoting *Chao v. Merino*, 452 F.3d 174, 182 (2nd Cir. 2006) (citations and internal quotation marks omitted).

Although the Tenth Circuit has not directly addressed this issue, the Court finds the guidance from other circuits persuasive. Courts throughout the country have found that ERISA imposes a duty on fiduciaries to provide complete and accurate information with respect to inquiries by beneficiaries. *See, e.g.*, *Barker v. American Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir.1995) (citation omitted). (An ERISA "fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance, even when a beneficiary has not specifically asked for the information."); *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999) (noting that fiduciaries "must give complete and accurate information in response to participants' questions," and that providing "materially misleading" information, by statement or omission, breaches this duty (citations omitted and emphasis added)); *Hamilton v. Allen-Bradley Co., Inc.*, 244 F.3d 819, 827 (11th Cir. 2001) (argument that "failure to disclose information to Hamilton does not rise to the level of a fiduciary duty" is "incorrect"); *Shea v. Esensten*, 107 F.3d 625, 629 (8th Cir. 1997) (HMO had fiduciary duty to disclose financial incentive structure intended to reward primary care physicians who minimized referrals to specialists); *Adams v. Brink's Co.*, 261 Fed. Appx. 583, 595 (4th Cir. 2008) ("Under ERISA, a fiduciary has a duty to provide beneficiaries with accurate information."); *Eddy v. Colonial Life Ins. Co.*, 919 F.2d 747, 750 (D.C. Cir. 1990) ("At the request of a

beneficiary (and in some circumstances upon his own initiative), a fiduciary must convey complete and correct material information to a beneficiary.").

The Court is persuaded by the weight of the authority in other circuits that a fiduciary under ERISA must provide complete and accurate information in response to an inquiry like Mr. Watson's. And here, EMC breached that fiduciary duty. EMC argues it had no duty to provide information regarding Mr. Watson's life insurance policy because it could not have known his e-mail was referring to his then-expired group life insurance policy when he asked how to pay "for benefits at the employee rate." EMC contends that any misunderstanding was caused by Mr. Watson failing to clarify that he was referring to life insurance benefits. ECF No. 134 at 14. This argument is unavailing. *See Harris v. Life Ins. Co. of N. Am.*, 419 F. Supp. 3d 1169, 1174 (N.D. Cal. 2019) ("ERISA fiduciaries cannot avoid their duties based on the technicalities of a participant's questions."). Mr. Watson asked about his benefits as a whole, relying on EMC as the Plan Administrator to provide him with information on how to continue those benefits. As an ERISA fiduciary, EMC had an obligation to respond to his inquiry with complete and accurate information regarding all benefits, including the information that his life insurance policy would need to be converted in order for him to maintain those benefits. *See Farr v. U.S. W. Commc'ns, Inc.*, 151 F.3d 908, 914 (9th Cir. 1998). ("[O]nce a fiduciary has information concerning the participant's circumstances, the fiduciary must disclose 'complete and accurate' information material to the participant's circumstances—'even when a beneficiary has not specifically asked for the information.' ") (quoting *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995) (citation omitted)).

8

Indeed, other courts have found a breach of fiduciary duty under similar circumstances. For example, in *Erwood v. Life Ins. Co. of N. Am.,* No. CV 14-1284, 2017 WL 1383922 (W.D. Pa. Apr. 13, 2017), the plaintiff's husband stopped working due to brain cancer. Plaintiff and her husband met with the plan administrator to determine how to continue his benefits, but the administrator failed to inform them that he needed to convert his group life insurance to an individual policy upon termination. *Id.* at *11. After her husband's death, the plaintiff's claim for the remainder of the policy was denied because the policy had lapsed due to the failure to convert. *Id.* The Court determined that the administrator breached its fiduciary duty under ERISA by failing to inform the plaintiff's husband of his conversion rights, reasoning that "[o]nce an ERISA beneficiary has requested information from an ERISA fiduciary who is aware of the beneficiary's status and situation, the fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance, even if that information comprises elements about which the beneficiary has not specifically inquired." *Id*. *See also Echague v. Metropolitan Life Ins. Co*, 43 F. Supp. 3d 994 (N.D. Cal. 2014) (finding breach of fiduciary duty where ERISA plan administrator failed to provide clear and complete information about continuation of life insurance coverage despite participant's inquiry and known terminal illness, resulting in lapse of coverage and denial of benefits).

The same is true here. Although Mr. Watson did not specifically inquire about his life insurance benefits, EMC, as the plan administrator, was aware of his status and that he would need to convert his life insurance benefits or lose coverage. And while it is true that, by its terms, Mr. Watson's group life insurance policy had ended at the time of his

9

inquiry, he was still within the eligibility window for converting his group life insurance policy to an individual life insurance policy. Indeed, EMC concedes as much. See ECF No. 134 at 1 ("The express terms of the Plan provide that [Mr. Watson] could submit an application to MetLife to convert this group life coverage to individual coverage within 91 days after the end of his coverage under the Plan – i.e., by February 23, 2017."). Thus, as a prudent fiduciary, EMC should have responded to Mr. Watson's inquiry regarding how to continue his benefits with "complete and accurate" information regarding how to continue his health insurance benefits under the plan and informed him that his life insurance coverage would need to be converted to an individual plan with MetLife for his life insurance benefits to continue.

The fact that Mr. Watson was in possession of documents—namely the Separation Agreement and Certificate of Insurance—that explained the end date of his coverage and the need to convert the policy, does not relieve EMC of its fiduciary obligation to respond to his inquiry with complete and accurate information. At a minimum, EMC should have explained to Mr. Watson that he would be losing his life insurance benefits if he did not convert the group policy to an individual policy, and pointed Mr. Watson back to the documents explaining how to do so. *See Echague,* 3 F. Supp. 3d 994, 1019 (plan administrator breached fiduciary duty when it knew where the information on how to continue or convert her coverage was located but did not direct her to that information). Instead, EMC directed him to simply continue paying his bills and did not reference or direct him to any of the documents which explained the need to convert his life insurance policy.

For these reasons, the Court concludes that EMC breached its fiduciary duty to provide complete and accurate information in response to Mr. Watson's inquiry about how to continue his benefits.

### C.   Equitable Relief

Having found that EMC breached its fiduciary duty to Mr. Watson, the Court must consider the appropriate remedy. Plaintiff seeks equitable relief in the form of a surcharge pursuant to 29 U.S.C. § 1132(a)(3). That section of ERISA provides that "[a] civil action may be brought . . . by a participant or beneficiary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

The Supreme Court has expressly recognized that for ERISA's purposes, surcharge "fall[s] within the scope of the term 'appropriate equitable relief' in [§ 1132(a)(3)]." *CIGNA Corp. v. Amara,* 563 U.S. 421, 440-42 (2011). And as the Court explained in its previous order, "the fact that such relief may take the form of monetary compensation does not necessarily remove it from the category of 'appropriate equitable relief' under 29 U.S.C. § 1132(a)(3)(B). ECF No. 110 at 11; *see also Amara*, 563 U.S. at 441 ("Equity courts possessed the power to provide relief in the form of monetary compensation for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment. Indeed, prior to the merger of law and equity this kind of monetary remedy against a trustee, sometimes called a surcharge, was "exclusively equitable.") (internal citations and quotation marks omitted).

11

Accordingly, Plaintiff may be entitled to surcharge if she can demonstrate actual harm from EMC's breach of fiduciary duty. *See* 563 U.S. at 442. ("[A] fiduciary can be surcharged under [§ 1132(a)(3)] only upon a showing of actual harm—proved (under the default rule for civil cases) by a preponderance of the evidence."). Here, EMC's breach of fiduciary duty resulted in actual harm to Plaintiff. Because of EMC's failure to provide accurate and complete information in response to Mr. Watson's inquiry, he failed to convert his life insurance coverage. Plaintiff was therefore denied her expected benefits. The Court finds that surcharge in the amount of the lost benefits—$633,000—is appropriate equitable "make-whole relief." *Amara*, 563 U.S. at 442. The Court does not find that interest is appropriate equitable relief, but agrees with Plaintiff that the surcharge amount should be reduced by the amount of any premiums that were required in order to maintain Mr. Watson's coverage because "if EMC had not breached its fiduciary duty, and Mr. Watson's life insurance coverage had been properly converted, the Watsons would have been required to pay premiums for that coverage, and thus in order to avoid a windfall the amount of those premiums should be deducted from any surcharge award." ECF No. 133 at 23 n.3.

## IV.     CONCLUSION

The parties' Joint Stipulation and Motion for Determination, ECF No. 142, is GRANTED consistent with this Order, and, for the reasons stated above, the Court finds in favor of Plaintiff and against EMC. Plaintiff's request for equitable relief in the form of surcharge is GRANTED IN PART such that Plaintiff is awarded equitable surcharge in the amount of $633,000, reduced by the amount of premiums that were required to

maintain Mr. Watson's coverage. Plaintiff and EMC shall submit a proposed judgment consistent with this ORDER within ten days. Plaintiff may file a separate motion for an award of reasonable costs and attorneys' fees pursuant to ERISA, 29 U.S.C. § 1132(g).

DATED: May 7, 2025

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge